UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ronald Rice,                                                           Case No. 3:13-cv-00263

         Plaintiff

   v.                                                                        MEMORANDUM OPINION
                                                                              AND ORDER

Kellermeyer Company,

         Defendant

## I.    INTRODUCTION

Before me is the motion of Defendant Kellermeyer Company for summary judgment. (Doc. No. 33). Plaintiff Ronald Rice has filed a response to Kellermeyer's motion. (Doc. No. 41). Kellermeyer filed a reply. (Doc. No. 43). For the reasons stated below, I deny Kellermeyer's motion for summary judgment on all claims.

## II.    STANDARD

A district court shall grant a party's motion for summary judgment if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant may meet its burden by showing there is an absence of evidence to support an element of a claim on which the nonmovant has the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has satisfied its burden, the nonmovant then must set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). All evidence must

be viewed in the light most favorable to the nonmovant, and all reasonable inferences drawn in the nonmovant's favor. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### III.  BACKGROUND

Rice worked for Kellermeyer as the Vice-President of Sales from January 2011 until his termination on June 15, 2012. At the beginning of 2012, Rice announced to his coworkers that his wife was pregnant with their first child. (Doc. No. 25 at 23; Doc. No. 26 at 6). Days later, Rice was assigned to additional duties, previously filled by a full-time employee who had just left Kellermeyer. (Doc. No. 31-6 at 1).

On June 6, Rice requested permission to use vacation time from June 11 through June 15, in part because of "an unexpected appointment" for his pregnant wife. (Doc. No. 32-1 at 3). Jill Kegler, as Rice's supervisor and Kellermeyer's Co-President along with her husband Greg Kegler, reviewed his request and declined to permit Rice to use paid leave to cover June 14 and June 15. She informed Rice that if he "chose to take those days off, they will be unpaid." (Doc No. 32-2 at 1). Rice subsequently requested Family and Medical Leave Act ("FMLA") paperwork from Michele Miles, Kellermeyer's director of human resources, to enable him to attend the appointment, explaining that Jill had not approved his request for paid time off. (Doc. No. 29 at 29). On June 15, 2012, three days after he requested the FMLA paperwork, Rice was terminated. (Doc. No. 39 at 28). Jill hired Mike Pisa to replace Rice, and Pisa started a few days after Rice's termination. (Doc. No. 30 at 47).

Rice contends Kellermeyer violated provisions of the FMLA by interfering with, restraining, or denying Rice the exercise of rights provided under the FMLA and retaliating against Rice by discharging him for asserting or otherwise exercising his rights under the FMLA. (Doc. No. 1 at 3). Kellermeyer asserts Rice's termination was a result of months of his failure to reach goals, execute plans, and meet the expectations of a Vice-President of Sales.

### IV.   ANALYSIS

The Sixth Circuit recognizes two distinct theories for recovery under the FMLA: (1) the "interference" theory arising under 29 U.S.C. § 2615(a)(1), and (2) the "retaliation" theory arising under 29 U.S.C. § 2615(a)(2). *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012). Rice has brought claims under both theories, asserting Kellermeyer interfered with his rights under the FMLA and that his termination was the result of retaliation for his attempt to utilize his FMLA rights.

#### A. INTERFERENCE

The interference provision of the FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided in the Act. 29 U.S.C. § 2615(a)(1). To establish a prima facie case of interference under the FMLA, a plaintiff must demonstrate: (1) he was an eligible employee; (2) the defendant was an employer as defined in the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave defendant notice of his intention to take leave; and (5) the defendant denied the plaintiff FMLA benefits to which he was entitled. *Edgar v. Jac Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). The interference theory does not convert the FMLA into a strict-liability statute because "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of the FMLA rights for engaging in the challenged conduct." *Id.* at 508.

Rice identifies evidence to establish, and Kellermeyer does not directly dispute, the existence of the five elements necessary to form an interference claim. Instead, Kellermeyer offers an explanation for his termination it claims to be unrelated to Rice's FMLA claim, which I will address below.

### B. RETALIATION

The FMLA also makes it unlawful for an employer to discharge an employee for a reason prohibited by the statute. *Seeger*, 681 F.3d at 282; *see* 29 U.S.C. § 2615(a)(2). In contrast to the interference theory, here the defendant's motive "is relevant because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Seeger*, 681 F.3d at 282 (quoting *Edgar*, 443 F.3d at 508) (emphasis in original). To establish a prima facie case of retaliation, the plaintiff must show that: (1) he was engaged in an activity the FMLA protects; (2) the defendant knew he was exercising his FMLA rights; (3) the defendant took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 447 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). The plaintiff's burden to establish a prime facie case is not difficult; instead the burden is easily met. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Kellermeyer asserts that Rice cannot establish the second and fourth criteria of his prima facie case.

#### a. KNOWLEDGE

Kellermeyer claims Rice can show no evidence that Jill knew about the FMLA request prior to terminating Rice. The Sixth Circuit has held "one cannot retaliate against an employee for engaging in protected activity unless he *knew* the employee had done so." *Scott v. Eastman Chem. Co.*, 275 F. App'x. 466, 482 (6th Cir. 2008) (emphasis added). Knowledge may be inferred from evidence

4

in the record. *Id.*; *see, e.g.*, *Proffitt v. Metro. Gov't of Nashville & Davidson Cnty.*, 150 F. App'x 439, 442-43 (6th Cir. 2005); *Bills v. Aseltine*, 958 F.2d 697, 708 (6th Cir. 1992) ("Facts may be established by inference, but the inferences must be reasonable ones."). Rice points to evidence in the record sufficient to show there is a genuine issue of material fact as to whether Kellermeyer's decision makers had knowledge of his protected activities.

First, Rice asserts a reasonable juror could infer Jill learned of Rice's FMLA request from Greg, Michelle Miles, or both. After Rice informed Miles he needed FMLA paperwork because Jill had not approved his request for time off to attend his wife's appointment, Miles conducted an internet search to obtain the necessary documents, as there were no copies in her office. (Doc. No. 29 at 29). Moreover, several days before Rice's termination, Miles informed Greg that Rice had requested FMLA paperwork. (Doc. No. 25 at 30). Greg testified he is normally notified of a FMLA request only if an employee who directly reports to him is approved for leave. (Doc. No. 25 at 30). Consequently, the conversation between Miles and Greg was unusual because Rice did not directly report to Greg, nor had the leave request been approved. (Doc. No. 25 at 31).

Kellermeyer asserts this circumstantial evidence is not enough to overcome the deposition testimony from Miles, Jill, and Greg that neither Miles nor Greg told Jill of Rice's FMLA request. (*See* Doc. No. 29 at 29; Doc. No. 25 at 31). Rice argues I should disregard this testimony at the summary judgment stage because Miles, Greg, and Jill are interested witnesses, and the jury would not be required to believe their statements. The Supreme Court has instructed lower courts weighing Rule 50[1] motions to "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from *disinterested witnesses*." *Reeves v. Sanderson Plumbing Prod. Inc.*, 530 U.S. 133, 151 (2000) (emphasis added). This does not require a court to disregard all evidence provided

---

[1] The *Reeves* Court noted the inquiry is the same under Rule 50 and Rule 56. *Reeves*, 530 U.S. at 150.

by an interested witness in support of the moving party, as "defendants will often be able to respond only through the testimony of their employees." *Stratienko v. Cordis Corp.*, 429 F.3d 592, 598 (6th Cir. 2005) (citing *Almond v. Abb Indus. Sys., Inc.*, 56 F. App'x 672, 675 (6th Cir. 2003)). It is well established "that courts need not deny the conclusiveness of testimony of the moving party that 'is not contradicted by direct evidence, nor by any legitimate inferences from the evidence[,]' because the rule requiring the testimony be considered by the jury is not 'an absolute and inflexible one.'" *Stratienko*, 429 F.3d at 598 (quoting *Chesapeake & Ohio Ry. v. Martin*, 283 U.S. 209, 218 (1931) (alteration in original)).

Here a reasonable juror could reject the interested-witness testimony by drawing legitimate inferences from the record evidence. Although there is no direct evidence to contradict Greg's and Miles' assertions they never spoke with Jill about Rice's FMLA request, it is unlikely there would be. Miles knew Jill denied Rice's request to use paid leave for June 14 and 15, and also testified she never had received a request for FMLA forms prior to Rice's request. Mile's office was three doors from Jill's. (Doc. No. 29 at 30). It is unlikely any evidence of a short, in-person conversation between them existed, just as it is unlikely there would be evidence of a similar conversation between the Keglers. As husband and wife, Greg and Jill would have more frequent interactions than typical coworkers. Moreover, the Keglers are members of Kellermeyer's leadership team and co-owners of the company. Given the unusual circumstances – the Keglers' uncommon personal and professional relationship and Miles' conversation with Greg about Rice's FMLA request despite the fact that company policy did not require Greg be told *even after* the request was processed – a reasonable juror could reject the proffered testimony and conclude Jill learned about Rice's FMLA request before his termination.

Second, Rice argues that, even if Jill did not know of the FMLA request, Greg was a decision-maker in his termination. To be considered a decision-maker, a supervisor must be

6

meaningfully involved in or influence the adverse employment decision at issue. *Wells v. New Cherokee Corp.*, 58 F.3d 233, 237-38 (6th Cir. 1995); *see also Marsh v. E. Assoc. Estates Realty*, 521 F. App'x. 460, 467 (6th Cir. 2013) (a plaintiff must cite evidence that would permit a jury reasonably to conclude an individual made or had the power to make termination decisions).

Jill asserts she made the decision to terminate Rice unilaterally, with no input from her leadership team and that the team was unaware of Rice's termination until it occurred on June 15. Rice has pointed to sufficient evidence to identify a genuine dispute of material fact as to whether Greg was a decision-maker in Rice's termination. Greg was a member of the "leadership team" at Kellermeyer and played a part in hiring Rice. (Doc. No. 30 at 20; Doc. No. 25 at 25). Greg also admitted to interviewing Rice's replacement, Mike Pisa. (Doc. No 25 at 32). This interview was referenced as early as May 24 in an email from Jill to Pisa and appears to have occurred on June 6 or 7. (Doc. 35-1 at 9). It was only after this planned meeting and Rice's termination that Jill made Pisa an offer for the position. A reasonable juror could find Greg was meaningfully involved in Rice's termination. There is sufficient evidence to establish Rice's supervisors knew of his FMLA request prior to terminating him.

    b.  CASUAL CONNECTION

Kellermeyer claims that there is no causal connection between the protected FMLA activity and the adverse employment action taken against Rice three days after the request was made. "[W]here temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence, such as to permit an inference of their claim retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). "Although no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the Plaintiff's exercise of protected rights is relevant to causation." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (quoting *Nguyen v. City of Cleveland*, 229

7

F.3d 559, 563 (6th Cir. 2000)) (concluding three month time frame constituted sufficient evidence to establish a causal connection). Numerous Sixth Circuit decisions have held a close temporal proximity between the protected activity and adverse employment action meets the low threshold of proof necessary to establish a prima facie case of retaliation. *See, e.g.*, *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525-26 (6th Cir. 2008); *Seeger*, 681 F.3d at 283-84; *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 533-34 (6th Cir. 2011); *Davidson v. Roadway Express, Inc*., 562 F.Supp.2d 971, 983 (N.D.Ohio 2008); *see also Vereecke v. Huron Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) ("the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement his claim with 'other evidence of retaliatory conduct to establish causality.'" (quoting *Mickey*, 516 F.3d at 525)).

Kellermeyer argues Rice's termination was not retaliatory because (1) Jill had no knowledge Rice requested FMLA paperwork and (2) Jill had been in discussions with Pisa to replace Rice months prior to his FMLA request. I concluded above that given evidence in the record, a reasonable juror could find Jill in fact knew of the FMLA request. Further, Kellermeyer has not identified any evidence to support its assertion Jill had been planning "for months" to hire Pisa to replace Rice. (Doc. No. 33 at 16). Rather, Jill's emails frequently reflect only a promise to "stay in touch" and desire "to keep [the] conversation going." (Doc. No. 35-1 at 2, 7). Even Jill's suggestion that "[t]here may be a place in BG" for Pisa makes no reference to the job duties involved. (Doc. No. 35-1 at 3).

Rice was terminated very shortly after he requested FMLA paperwork. (Doc. No. 32-2 at 1; Doc. No. 30 at 47-48). While Rice actually was terminated on June 15, Jill met with Pisa to discuss a sales leadership position on June 14, (Doc. No. 35-1 at 10), and stated she made the decision to fire Rice two or three days (i.e., June 12 or 13) before terminating him. (Doc. No. 30 at 48). The close

8

temporal proximity of Rice's request for FMLA paperwork and his termination is sufficient to establish the casual connection prong of his prima facie case.

### C. PRETEXT

The *McDonnell Douglas* burden-shifting framework applies in FMLA interference and retaliation claims, as the employer must offer a legitimate reason unrelated to the exercise of FMLA rights for terminating an employee after the employee establishes the elements of the prima facie case. *Jaszcyszyn*, 504 F. App'x at 447-48 (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761-62 (6th Cir. 2012)); *Edgars*, 443 F.3d at 508. Kellermeyer argues it had a legitimate reason to terminate Rice unrelated to his request for FMLA paperwork – Rice underperformed as VP of Sales and failed to meet the company's expectations.

"Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 248. "The plaintiff may show that (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Imwalle v. Reliance Medical Prod. Inc.*, 515 F.3d 531, 545 (6th Cir. 2008) (citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The plaintiff bears the burden of producing evidence sufficient to allow a jury to reasonably reject the defendant's justifications and infer the defendants intentionally discriminated against the plaintiff. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). *See also Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

Kellermeyer asserts Rice was terminated because of underperformance. Rice has identified enough evidence to allow a reasonable juror to find this justification is an insufficient reason to support his termination. Kellermeyer argues the reviews Rice received and the email exchanges

9

between Rice and Jill show consistent underperformance and continued long enough to justify his termination. The reviews, however, also contain very positive material and highlight numerous positive aspects Jill viewed in Rice's work. Both reviews expressly state that Rice is a valued member to Kellermeyer and the skillset Rice exudes is a benefit to the company. (Doc. No. 31-2; Doc. No. 31-4). Tellingly, in Rice's annual review in December 2011, Jill stated "it takes time to see the fruits of his labor, I expect next year to be scoring Ron higher." (Doc. No. 31-4). The reviews do not conclusively demonstrate Rice's underperformance and they could allow a reasonable juror to find that Kellermeyer's justification is insufficient to support Rice's termination. Furthermore, after completing the reviews, Jill gave Rice additional responsibilities; namely he was tasked to fill the void of another full-time position that had been vacated. The email messages that followed this delegation of new responsibilities similarly are not sufficient to justify Rice's termination. Given that Jill delegated new responsibilities to Rice, a reasonable juror could find that these emails demonstrate Jill continually guiding Rice with his new responsibilities instead of evidence warranting his termination.

     Rice also offers enough evidence to create a jury question as to the actual reason for his termination. Specifically, Rice asserts Jill had a change of position in regards to his status at Kellermeyer *after* learning of his wife's pregnancy. Prior to this announcement, Jill reviewed Rice's work twice and stated her belief Rice would improve with time and was an important figure at Kellermeyer. The email exchanges between Jill and Rice that point to performance concerns and a breakdown in communication occurred only *after* the pregnancy announcement. This timing allows a juror to make the reasonable inference of retaliation and interference when considered in light of all of the evidence.

     Jill did not have conversations with Pisa that alluded to future employment until after her knowledge of Rice's wife's pregnancy. Furthermore, the conversations Jill had with Pisa do not

demonstrate any clear intention that Jill was interested in replacing Rice with Pisa. A reasonable juror could find these conversations as evidence the actual reason for Rice's termination is centered on his impending absences from work due to his wife's pregnancy, not underperformance.

Rice has met his "burden of producing evidence sufficient to allow a jury to reasonably reject the defendant's justifications and infer the defendants intentionally discriminated against" him. *Johnson*, 319 F.3d at 866. This evidence permits the conclusion that Kellermeyer's explanation for Rice's termination merely is a pretext for retaliation and interference. Therefore, Kellermeyer's motion for summary judgment is denied.

## V. CONCLUSION

For the reasons stated above, I deny Kellermeyer's motion for summary judgment.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
